**MASON et al. v. UNIVERSITY OF
THE SOUTH.**

No. 14939.

Court of Civil Appeals of Texas.
Fort Worth.

June 4, 1948.

Rehearing Denied July 9, 1948.

S. C. Rowe and R. M. Rowland, both of Fort Worth, for appellant, George Beggs, executor.

Jos. Irion Worsham, of Dallas, for appellant, C. Avery Mason, Bishop.

Ernest May, of Fort Worth, for appellants, St. Andrew's Episcopal Church and Trinity Episcopal Church, Fort Worth, Texas.

Rawlings, Sayers & Scurlock, of Fort Worth, for appellee St. John's Episcopal Church.

Ernest May, of Fort Worth, for other appellee churches.

Thompson, Walker, Smith & Shannon, F. B. Walker and Thos. H. Law, all of Fort Worth, for appellee, University of the South.

McDONALD, Chief Justice.

This appeal involves two main questions, which have something in common by way of historical background, but which for the most part are so unrelated that they will be discussed separately.

In 1924 E. D. Farmer died, leaving a large estate which was directed by his will to be given to charitable and other worthy purposes. In 1930 George Beggs, the executor, conveyed a parcel of land in Fort Worth in trust to Harry T. Moore, Bishop of the Protestant Episcopal Church of the Diocese of Dallas, and his successors in office, and on the same day Beggs and Bishop Moore executed a written declaration of trust which provided, among other things, that upon sale of such property if seventy per cent of the net proceeds of sale should amount to $700,000, $250,000 thereof should be paid to The University of the South, an institution located in Sewanee, Tennessee, and the remainder of said seventy per cent should be paid to other named beneficiaries of the trust thus created. We need not discuss what was to be done with the other thirty per cent. One clause of the declaration of trust read as follows: "If seventy per cent of the net proceeds of the sale of the above property shall not equal $700,000, each of the above gifts shall be proportionately reduced, unless the deficiency is supplied as provided in paragraph third (3rd) hereof."

The University of the South, which will hereafter be referred to as the University, brought the present suit in August of 1946. George Beggs, C. Avery Mason, the successor in office of Bishop Moore and the other beneficiaries named in the declaration of trust were made parties. The University claims that it was the intention and the agreement of Beggs and Bishop Moore when the trust was created that the University should have priority respecting the proceeds of sale of the trust property, so that it should receive $250,000 out of the seventy per cent of the proceeds of sale before any part of the seventy per cent should be paid to the other beneficiaries. The University seeks to reform the trust instrument on the ground of mutual mistake, and claims that it did not know of the mistake until less than four years before the suit was brought. In his pleadings, Beggs alleged that he and Bishop Moore intended and agreed that the University should have such priority, and that the trust instrument should be reformed accordingly. Bishop Mason, the successor to Bishop Moore, denied the claim of mutual mistake in his pleadings, as did the other beneficiaries of the trust.

The trust property has not yet been sold.

The trial court, in a non-jury trial, rendered judgment supporting the University's claim of mutual mistake and adjudged that the trust instrument should be reformed accordingly. The court filed separate findings of fact and conclusions of law, some of which will be referred to in the course of the opinion.

Bishop Mason, on behalf of the Diocese of Dallas, and St. Andrews Episcopal Church and Trinity Episcopal Church, both of Fort Worth, have appealed from the above portion of the judgment. St. John's Episcopal Church, of Fort Worth, and All Saints Episcopal Church, of Weatherford, also beneficiaries of the trust, have not appealed.

"Under general rules on the ground of mistake, a court of equity will correct and reform a deed of trust so as to conform to the intention of the settlor." 65 C.J. 339.

"Reformation is appropriate, when an agreement has been made, or a transaction has been entered into or determined upon, as intended by all the parties interested, but in reducing such agreement or transaction to writing, either through mistake common to both parties, or through mistake of the plaintiff accompanied by the fraudulent knowledge and procurement of the defendant, the written instrument fails to express the real agreement or transaction. In such a case the instrument may be corrected so that it shall truly represent the agreement or transaction actually made or determined upon according to the real purpose and intention of the parties." 3 Pomeroy's Equity Jurisprudence, Fifty Ed., Sec. 870, page 384.

Similar declarations may be found in many texts and decisions.

Beggs and Bishop Moore both testified in substance that they intended that the University should have priority as to the proceeds of sale of the property, and there appears to be no contention that the evidence fails to support the finding of the trial court to that effect.

The trust instrument was executed in 1930, and suit to reform the trust instrument was not brought until 1946. Appellants vigorously contend that the suit is barred by the four year statute of limitation. Art. 5529, Revised Civil Statutes.

"The right to relief by reformation is subject to the statutes of limitation, and, even if not barred by limitation, a stale demand may be denied. An instrument may be reformed for mutual mistake if relief is sought as soon as the mistake is discovered." 36 Tex.Jur., p. 763.

"Limitation begins to run against the right to reformation from the time when the person mistaken discovered, or should have discovered, the error or omission * * *." Id., p. 765.

"A plaintiff alleging a belated discovery should state reasons why it was not made sooner, pleading facts sufficient, prima facie, to constitute an excuse. Unless it be alleged that a mistake which occurred long ago was but recently discovered, it will be assumed that it was known to the parties from the time of the execution of the writing in which it is found." Id., p. 764.

It is necessary to remember the distinction between the cases where negligence in not discovering the mistake is presented as a defense to the suit to reform, where there is no question of limitation, and those in which the plaintiff seeks to toll the statutes of limitation by claiming that he did not know of the mistake and could not by the exercise of reasonable diligence have discovered it prior to four years before bringing the suit. For discussion of the rules governing the former class, see 36 Tex.Jur., pp. 758–762.

"An injured person must be diligent in discovering a mistake, and where means of discovery are at hand, the statute runs from the time of acquiring knowledge sufficient to put the plaintiff on inquiry, and which, if acted upon, would have lead to the discovery of the mistake." 28 Tex.Jur., p. 166.

"Whether the plaintiff exercised proper diligence ordinarily is a question of fact for the jury." Id., p. 167.

The parties before us do not appear to disagree as to the rules of law applicable,

but rather as to the application of them to the evidence in the record.

The trial court found, among other things, the following: "That at or about the time of the execution of these instruments defendant Beggs advised the plaintiff that it was a beneficiary thereunder and that it had such priority in the event of sale of the property. He and Bishop Moore continued to so advise the plaintiff from time to time, and the plaintiff relied upon such advice and believed it had such priority."

He also found: "That plaintiff did not fail to exercise reasonable and due diligence under all of the circumstances surrounding the transaction to discover that the declaration of trust did not give to it the priority intended and agreed upon by the parties thereto."

Appellants charge that there is no evidence to support the finding that Beggs and the Bishop advised the University that it had priority. We find no evidence to show that Bishop Moore said anything about priority to the University officials before 1939 or 1940, and possibly not until later. There is some meager testimony, however, indicating that Beggs told them that the University had such priority at or shortly before the trust was created in 1930. Beggs testified that he talked to Dr. Finney, the president of the University, about the gift, that it was Beggs' intention at the time to give the University priority, and that he conveyed that information to Dr. Finney. Dr. Finney was dead at the time of the trial. Mr. Hodgson, who had been treasurer of the University since 1908, testified over objection that Dr. Finney told him that the University had priority. Mr. Hodgson said that a copy of the trust deed was received at the University, and placed in its vault, and that Mr. Hodgson set the fund up on the books as the E. D. Farmer trust fund, listing the amount of it as $250,000. It is clear from Mr. Hodgson's testimony that he had thought from the beginning that the University had priority. No other official of the University appeared as a witness.

Appellants argue that even if Beggs and the Bishop advised the University that it

had priority, such fact was immaterial. They argue that the evidence shows as a matter of law that the University was not diligent in discovering the mistake more than four years before the suit was filed. They argue that the statute of limitation began to run in 1930, when the deed was executed.

The court found that the mistake was not discovered nor brought to the attention of Beggs and Bishop Moore, nor to the University, until the month of July in 1945. He found, quoting, "Until such time plaintiff had never heard its priority questioned and was unaware that there was or would be any opposition to its receiving such priority or any contention that the declaration of trust did not give it such priority."

■ While, as we have said, the evidence concerning the belief of the University governing officials about the matter is meager, we think that it is sufficient to support the above findings. There is a presumption, in the absence of proof to the contrary, that the parties were familiar with the contents and meaning of the instrument from the date of its execution, but both Beggs and Bishop Moore testified positively that they intended that the University should have priority, and that they did not learn of the mistake until many years afterward, and, as we have said, there is enough evidence in the record to warrant the finding that the University was also mistaken about the matter. As above stated, the question of diligence, or of negligence, with reference to the discovery of the mistake, is one of fact for the jury, or for the judge in a non-jury case. On appeal we must view the evidence in the light most favorable to the findings of fact made below. It is rather hard for us to see how Beggs, the Bishop, and the University officials could have been mistaken about such an important matter, but we are not permitted to substitute our judgment on the facts for that of the trial court so long as there is any evidence of probative value to support his findings.

We now come to the other phase of the appeal.

As stated above, Beggs conveyed the land in question to Bishop Moore in 1930, and at

the same time Bishop Moore and Beggs executed the declaration of trust under which thirty per cent of the rents and revenues from the property were retained by Beggs as executor of the Farmer estate. Prior to 1942 Beggs learned that under the laws of Texas he could not appoint his successor as executor of the Farmer estate, and, according to his testimony, conceived the plan of conveying in trust to Bishop Moore the thirty per cent of the revenues which had been retained by the Farmer estate, to be paid to beneficiaries named in the instrument of conveyance, in order that Bishop Moore, or his successors in office as Bishop of the Diocese, would have the handling and disposition of the entire property, both as to its corpus and as to its income. Beggs instructed an attorney to prepare such an instrument, and in 1942 both he and Bishop Moore signed and acknowledged an original and a carbon copy. Beggs kept the original and the Bishop took the signed copy.

Beggs and Bishop Moore both testified that it was their intention, and their agreement with each other, that the 1942 instrument was not to become effective when signed, but only upon the death or disability of Mr. Beggs. Both alleged that the 1942 instrument never became effective, and that it was superseded by a later instrument signed in 1947.

The trial court held that the 1942 instrument was in full force and effect, and decreed a partial cancellation of the 1947 instrument. Beggs and Bishop Mason, successor to Bishop Moore as Bishop of the Dallas Diocese, have appealed from this portion of the judgment. The appellees are the University of the South, and the four churches above named, all of whom were named as beneficiaries in the 1942 instrument.

In his findings of fact the trial court found that the 1942 instrument was intended by Beggs to be a deed of gift, that it was delivered by Beggs to Bishop Moore on or about the day of its execution with the mutual intent that it should operate as a deed of gift from and after that date, and that the parties to the instrument began acting under it soon after its delivery.

Appellants contend that there is no evidence to support the above findings, and that they are against the overwhelming preponderance of the evidence. They say that the 1942 instrument never became effective because there was neither delivery of it nor acceptance of it.

"The question of the delivery of a deed is one of intention on the part of the grantor, to be determined from all the facts and circumstances. There must be an intention to deliver and acts tending to show an execution of that intention. The instrument must be placed within the control of the grantee, with the purpose that it shall become operative as a conveyance and with the intent on the part of the grantor to relinquish control of it." 14 Tex.Jur. p. 821.

"In the absence of a showing of accident, mistake, fraud or similar ground for relief, it is a rule of general application that when the grantor places a deed in the hands of the grantee, except for some special purpose, the law conclusively presumes that he intended it to become operative as a conveyance, and the delivery is complete and valid." Id., p. 824.

Appellees argue that the rule last quoted cuts appellants off from claiming that there was anything other than an effective delivery of the deed. Appellants argue that Beggs retained the original deed, that the Bishop was given only a carbon copy, and that there was nothing in the record to contradict their testimony to the effect that they did not intend that the deed should then become effective.

To us there appears to be an inconsistency in the argument put forth by appellants. As we interpret their testimony, both intended that the deed should become effective if Beggs should die or become disabled, and there is nothing in the evidence to show that they intended such a result only if there was a future delivery of the original, as distinguished from the carbon copy, of the deed from Beggs to Bishop Moore. From their testimony it seems that they considered that they had done all that they thought necessary to complete the transfer of the thirty per cent in question from Beggs to the

Bishop, in the event Beggs should later die or become disabled. For some purposes, under appellants' theories, there had been a completed transaction, for other purposes there had not. The instrument was not one which by its own terms would become effective only upon condition, or in the future. By its own terms it was presently effective. From their own testimony, it seems to us, it appears that the parties considered that there had been all the delivery that was necessary to place Bishop Moore in position to hold in trust and to dispose of the thirty per cent of the revenues in the event Beggs should later die or become disabled. We may put this query: If the instrument was not delivered when it was signed, could there have been a binding agreement that the agreement would be delivered only upon Beggs' death? Who would have delivered it? Would the carbon copy in the Bishop's hands be treated as then having been delivered? To ask these questions, it seems to us, demonstrates the inconsistency in appellants' position. The situation is in some respects analogous to that in Denman v. Hall, 144 Tex. 633, 193 S.W.2d 515, 516, where it is said: "It is impracticable to review all the Texas decisions, but we think they uniformly recognize that an oral contemporaneous condition cannot be proved if it is inconsistent with the terms of a written instrument duly delivered to the party against whom the condition is sought to be invoked."

 It cannot be said, therefore, that the testimony of Beggs and Bishop Moore showed without dispute that it was not their intention to deliver the instrument when it was signed. Their testimony, taken alone, was such as to warrant a finding that the deed was then delivered, subject to an oral agreement of the parties that it should not then become operative (that is to say, that the thirty per cent should not from that time forward be paid in trust to Bishop Moore), but that Bishop Moore should begin receiving the thirty per cent from and after the death or disability of Beggs. We do not hold that a delivery as of the date of execution is shown without dispute, we simply hold

that the state of the evidence was such as to warrant a finding by the trial court that the delivery then took place, and that it was the intention of the parties (whether or not in this case a technical delivery of the trust deed was required to make it effective), that it should become operative from and after that date. There are also other facts and circumstances tending to support the trial court's findings.

In addition, we uphold the contention that there was evidence sufficient to warrant the finding that the parties acted under the deed. The evidence is conflicting, but we must give weight to that which tends to support the findings of the trial court.

The judgment of the trial court is affirmed.