Sam PALLAS et al., Appellants,

v.

Roy R. POWERS, Appellee.

No. 3069.

Court of Civil Appeals of Texas.

Eastland.

May 7, 1954.

Rehearing Denied June 4, 1954.

McMahon, Springer, Smart & Walter, Abilene, Whitaker & Brooks, Midland, for appellants.

Roy A. Downey, Odessa, Louis A. Fischl, Ardmore, Okl., for appellee.

GRISSOM, Chief Justice.

Powers sued Pallas, C. P. Ballas and George Michael. Powers alleged that on December 9, 1946, he owned an undivided one-third interest in an oil and gas lease in Scurry County, subject to an overriding royalty owned by C. F. Trammel, and that on said date said defendants unlawfully entered and dispossessed him and now withhold possession; that on August 11, 1949, he owned (a) an undivided one-third interest in an oil payment in the ultimate amount of $1,000 per acre, payable out of ¹⁄₁₆th of ⅞ths of the oil, gas and other minerals produced, and (b) an undivided one-third interest in an overriding royalty equal to ⅞₄ths of ⅞ths of the oil, gas and other minerals produced from a certain 83 acre tract, which was reserved in an assignment of an oil and gas lease thereon from Ballas to N. B. Hunt on August 11, 1949; that on said date defendants unlawfully entered upon and dispossessed Powers and withhold possession. Powers alleged that after execution of an oil and gas lease by Coonrod to Scott in 1946, Scott assign-ed same to Trammel, who assigned it to Powers and Ballas, with Trammel reserving an overriding royalty; that in August, 1946, Powers and Ballas assigned a ⅓rd interest in the lease to Sam Pallas.

Powers further alleged that on December 9, 1946, he agreed to sell and Sam Pallas agreed to buy Powers' remaining ⅓rd interest in said lease for $500 cash; that Pallas did not have the money and represented to Powers that if he would execute and deliver to him an assignment of said ⅓rd interest he would take it to Houston and obtain the money thereon and if he did not obtain the money he would return the assignment; that Powers did not consent to this proposition and Pallas then agreed to pay cash; that, in the absence of Powers, Pallas obtained the assignment from Powers' secretary by paying her $200 with the false representation that Powers had authorized such action; that on December 10th, Powers got in touch with Pallas and Pallas then represented to him that if Powers would permit Pallas to take the assignment to Houston, "that on the strength thereof he could immediately get the money and would pay the same to this plaintiff, and that if he did not do so he would surrender such assignment. That plaintiff was prevailed upon to so part with same upon such promise, undertaking and understanding that the said Pallas would immediately pay him said remainder of $250 upon his return to Houston or would surrender said assignment." Powers alleged that Pallas did not pay the $250.00 balance but recorded the assignment; that in 1949, Pallas executed and delivered to Ballas a power of attorney; that in March, 1949, Ballas, acting under said power of attorney, conveyed such interest to Leber and two days later Leber conveyed it back to Ballas, thereby placing in Ballas' name the record title to said leasehold estate; that Ballas acted in pursuance of a scheme to defraud Powers and Sam Pallas of their interests in said leasehold estate and, there-by, became a trustee for Powers as to his one-third interest in said lease; that in August, 1949, Ballas assigned said lease to Hunt for the following consideration: (a)

$40,000 cash; (b) an oil payment out of 1/64th of 7/8ths of the production from said leasehold until the sum of $1,000 per acre had been paid, or $80,000; (c) an overriding royalty equal to 7/64ths of 7/8ths of the production.

Powers alleged that Ballas knew Powers had not assigned his interest to Pallas and that Pallas had obtained the assignment from Powers by fraud; that Ballas thereby became a trustee for Powers to the extent of 1/3rd of the consideration paid and to be paid by Hunt, and that Ballas had refused to account to Powers for any portion of the consideration paid. Powers further alleged that in October, 1949, Pallas filed a suit against Ballas alleging fraud on the part of Ballas in obtaining and conveying Pallas' interest in said lease and claimed a trust as to his asserted 2/3rds interest (said 2/3rds interest being a 1/3rd interest secured from Powers and C. P. Ballas in August, 1946, and the 1/3rd obtained from Powers on December 9, 1946); that a judgment was rendered therein awarding Ballas and Pallas each one-half of the consideration paid and to be paid by Hunt; that in October, 1950, Pallas assigned to George Michael his interest in the overriding royalty awarded Pallas by said judgment; that the assignment to Michael was not for an adequate consideration but was made to hide the title of Pallas; that Michael was not an innocent purchaser and said assignment was not sufficient in law or fact to defeat the interest of Powers and that Ballas, Pallas and Michael were trustees for the use and benefit of Powers to the extent of Powers' 1/3rd interest in the consideration paid and agreed to be paid by Hunt for the assignment to him by Ballas. Powers obtained judgment for an undivided 1/3rd interest in the consideration paid and agreed to be paid by Hunt for the assignment of said lease. All defendants have appealed.

At the close of the testimony, Powers filed a trial amendment, alleging that on December 9, 1946, he agreed to sell and Pallas agreed to buy Powers' 1/3rd remaining interest in said leasehold estate for $500 cash to be paid on delivery to Pallas of an assignment; that Powers executed an assignment to Pallas and left it with his secretary with instructions to deliver it to Pallas upon receipt of $500; that Pallas obtained the assignment from Powers' secretary by paying $200 cash with the false representation that he had such an agreement with Powers; that Powers learned of this action and on December 10, 1946, found Pallas, who then "advised Plaintiff that he would go to Houston and there obtain the balance of the consideration for said assignment and either pay same over to Plaintiff or return the assignment to him." That Powers acquiesced in this request, upon the payment of $50 more in cash, with the agreement that the assignment would not be placed of record "until the full consideration therefor had been made and would not become effective and binding until the said Sam Pallas had paid the full consideration of $500 therefor and that if the said Sam Pallas did not pay the additional $250 due on the consideration for said assignment (an additional $50 having been paid by the said Sam Pallas thereon on December 10, 1946) there would be no deal between them, the assignment would be returned unrecorded and plaintiff would return the $250 paid to the said Sam Pallas;" that Pallas did not pay the $250 nor return the assignment, but had already recorded it, or sent it to be recorded.

Powers testified that in December, 1946, he sold his 1/3rd interest in the lease to Pallas for $500 to be paid in cash; that he executed the assignment and left it for delivery by his secretary; that she delivered it to Pallas upon receipt of $200; that he had told Pallas to pay the secretary; that when he returned to his office he learned that Pallas had obtained the assignment but had paid only $200, that the next day, December 10, 1946, he found Pallas and said to him, "I wanted my money;" that Pallas said "he was going to have to go to Houston to get the rest of it;" that Powers told Pallas that he ought to have the assignment until he got the rest of the money; that Pallas said "he needed the assignment in order to get the rest of

the money;" that, thereupon, they had the further agreement that Pallas pay him $50 more in cash and Pallas "was supposed to take the assignment and go to Houston, Texas, and get the money to pay me the other $250." "The conversation was that he needed the assignment to show the fellow that was putting up the money, so that he could get the balance of the money to finish the contract. And, he agreed that he would not put this assignment of record until it was paid for. If he did not get the rest of the money, he was to send my assignment back, and I would return the money. That is all there was to it." Powers further testified, over the defendants' objection, that it was not his intention to convey title to his ⅓rd interest in the lease until Pallas paid for it. Powers testified that on December 10, 1946, when he agreed that Pallas might keep the assignment obtained from Powers' secretary on the preceding day upon paying $50 more in cash, that he permitted Pallas to take the assignment to Houston to raise thereon the balance of the money he owed for the assignment, but with the understanding that if Pallas did not raise the remaining $250 he was to return the assignment to Powers and would not record it. He testified that he assumed that Pallas then had the assignment in his possession.

There was testimony that on the preceding day Pallas had dictated a letter to Powers' secretary in Powers' office to the effect that he was sending the assignment to the County Clerk of Scurry County. There is evidence that the assignment was received by said Clerk on December 17, 1946. Powers further testified:

"Q. Now, you say he told you in that connection that he was going to take the assignment to Houston, that he needed it to get you the rest of the money? A. That was my understanding about it.

"*      *      *      *      *      *

"Q. You understood that he would have to have the assignment to get the money. A. That is what he told me.

"Q. Did you expect at that time that he was going to sell it or an interest, to get the money? A. I haven't the slightest idea.

"*      *      *      *      *      *

"Q. Then if he was going to raise money, he was either going to impair this title in some way, or convey or mortgage. A. And, give me $250.00.

"Q. Give you $250.00? A. That was what I was interested in.

"Q. That was what you were interested in? A. Yes, sir.

"Q. And, you didn't care what he did with it, as long as he sent you the $250.00? A. As long as he sent me the $250.00, or if he couldn't send me the $250.00, to return the assignment, that was all I wanted."

Defendants' first contention is that an extrinsic condition cannot be imposed upon a delivered conveyance of realty which is absolute on its face. They contend that Powers' testimony shows the conveyance was complete and delivered; that it was signed, acknowledged, delivered by an authorized agent into the manual custody of the grantee and that such action was ratified the next day by Powers accepting $50 more cash on the original consideration and agreeing that Pallas might retain the assignment and take it to Houston and sell or mortgage it to obtain the $250 balance due Powers. We think Powers' testimony conclusively shows that he sold his ⅓rd interest to Pallas and executed and delivered the assignment, which contained no conditions, merely upon the promises of Pallas that if he could not obtain thereon the remainder of the purchase price he would not record the assignment but would return it to Powers. He testified that he did not care whether Pallas mortgaged or sold the assignment or what he did with it, provided he paid the $250.

█ As said by Judge Brewster in Denman v. Hall, 144 Tex. 633, 636, 193 S.W.2d 515, 516, the Texas decisions "uniformly recognize that an oral contempora-

neous condition cannot be proved if it is inconsistent with the terms of a written instrument duly delivered to the party against whom the condition is sought to be invoked."

In Holt v. Gordon, 107 Tex. 137, 174 S.W. 1097, Holt sued Gordon on notes executed by Gordon contemporaneously with a deed from Holt to Gordon conveying 60 acres of land; a third note for $1,300 was given in part consideration for the 60 acres and to cover said amount falsely recited in said deed as cash consideration paid by Gordon. The $1,300 note was further secured by a deed of trust executed by Gordon on a 212 acre tract. Holt sought judgment on the notes and foreclosure of his liens. Gordon answered that at the time of the execution of the deed to him to the 60 acres there was a parol agreement that neither the deed nor notes should become effective and binding unless Gordon should thereafter succeed in procuring a loan of $1,300 on the 212 acre tract with which to pay the same; that he could not obtain the loan and had abandoned possession of the 60 acres and tendered Holt a deed thereto and possession. Gordon alleged that by reason of these facts neither the notes, deed nor deed of trust ever became effective. There was evidence to sustain said plea, which was submitted to and sustained by a jury, and judgment was rendered thereon for Gordon. The Court of Civil Appeals held there was error in admitting such testimony over the grantor's objection that its effect was to vary the terms of the written instruments and reversed the judgment. It certified the correctness of this holding to the Supreme Court, which held the evidence inadmissible, stating that it may be shown by parol that an ordinary written instrument was executed under an oral agreement that it was not to become effective except on certain conditions.

"But that principle has never been recognized by this court as applicable to a deed to land, or a deed of trust affecting the land, where the delivery of the instrument was made to the grantee and not to a third person. It

has, upon the contrary, been distinctly held that a deed or deed of trust cannot be an escrow where it is delivered to the grantee in the instrument. In Heffron v. Cunningham, 76 Tex. [312], 313, 13 S.W. [259], 260, Heffron purchased certain property in Galveston from Mrs. Wicks, giving his three notes in payment, and executed a trust deed to secure their payment. He received the deed to the property from Mrs. Wicks, and made delivery of the deed of trust. Heffron contended that there was a verbal agreement, at the time he executed the notes, that if the title to the property was not cleared within a certain time, the trade was not to be considered as binding. In passing upon the question whether evidence of such an agreement was admissible to defeat the suit upon the notes, it was held, in the opinion of Chief Justice Stayton:

'At the time that indorsement was made appellant executed the notes and deed of trust to secure the purchase money, and received a deed from Mrs. Wicks. These were all delivered, and none of them evidenced other than a completed contract, whereby without condition appellant promised to pay the purchase money, and Mrs. Wicks conveyed the property. The deed was delivered to appellant, and there can be no claim that he held it as an escrow, to take effect on condition not expressed in its face, as might have been shown to be the case had it been delivered to a stranger. Having been delivered to appellant, the grantee, it became an absolute conveyance, on which could not be ingrafted by parol evidence any condition inconsistent with its terms. In absence of fraud or mistake, it cannot be shown by parol evidence that the contract evidenced by it was not to have effect in case the title was not cleared within 90 days. The notes and deed of trust are in the same condition.'

"That ruling cannot be regarded other than as decisive of this question. Holt's deed was delivered to Gordon,

the grantee named in it, and, accordingly, immediately took effect.

" * * * it is generally held that the delivery to the grantee of a deed absolute on its face will pass complete title to him regardless of any condition or contingency on which its operative effect is made to depend, provided, of course, there is otherwise a sufficient delivery under the rules stated supra §§ 41–47, without reservation of control or dominion over the deed by the grantor. *To thus vest complete title in the grantee, however, it is essential that it shall be the intention of the grantor that the instrument shall become operative, without further act upon his part, upon performance of the condition* * * *." 26 C.J.S., Deeds, § 48, pp. 251, 252. (Italics ours.)

"In such cases the grantor, by the act of handing the deed to the grantee, in fact passes title to the grantee; to permit him to set up the condition by parol would contradict his deed. The belief of both parties that a deed was invalid until recorded does not prevent the conditional delivery from passing the property disregarding the condition, nor does a contemporaneous agreement for reconveyance on non-fulfilment obviate the application of the rule, for this is an instance in which the honest intention of the parties will not be effectuated, because they have adopted a procedure which the law does not allow. While the rule has been relaxed as regards deeds not purporting to convey real estate, it remains in full force as regards a conveyance of land." 16 Am.Jur., Sec. 123, pages 506, 507.

"In the absence of a showing of accident, mistake, fraud or similar ground for relief, it is a rule of general application that when the grantor places a deed in the hands of the grantee except for some special purpose, the law conclusively presumes that he intended it to become operative as a conveyance, and the delivery is complete and valid.

If the instrument contains no express reservations or conditions, even though it is the grantor's intention that it is not to become operative until the happening of a certain contingency, the delivery is effectual to pass title presently." 14 Tex.Jur., page 824, Sec. 61.

In McClendon v. Brockett, 32 Tex.Civ. App. 150, 73 S.W. 854, 856 (Writ Ref.), the court held that a parol condition, attached to the delivery by the grantor to the grantee of a deed absolute on its face that the deed should not take effect as a conveyance until the grantor's death and then only upon the grantee's execution of notes to a third person, was void and the deed vested title immediately in the grantee. In Stephens v. Carr, Tex.Civ.App., 95 S.W.2d 215, 218 (Writ Dis.), the court held that delivery by the grantor to the grantee of a deed which contained no reservation or condition, passed title immediately even though the grantor intended that the deed should not become operative as a conveyance until the happening of a certain contingency and parol evidence was not admissible to vary the terms of the deed.

In Tripplehorn v. Ladd-Hannon Oil Corporation, Tex.Civ.App., 8 S.W.2d 217, 220, (application for writ dismissed for want of jurisdiction, 118 Tex. 195, 13 S.W.2d 666), this court had before it a case very similar to this case. It held that the evidence showed delivery of an assignment of a lease, complete in its terms and regular on its face and, therefore, parol evidence was not admissible to show the assignment was not to take effect until the happening of some future event not provided for in the assignment, and that parol evidence was not admissible to ingraft a condition on the assignment, which was complete on its face, and contained no such condition. In that case the assignor sought to cancel an assignment of a lease delivered to the assignee. The assignor contended he did not intend to deliver the assignment and that it was agreed it was not to become effective until a well was spudded in and that the assignee agreed to return the assignment to the assignor if he did not spud in a well by June 15th. The assignor was

permitted to testify that when he delivered the assignment to the assignee he did not intend for it to then become effective. The assignee objected to such testimony because the assignor was attempting by parol to establish a condition inconsistent with the writing. This court quoted 1 Devlin on Deeds, p. 553, Sec. 314, as follows:

> " ' "A deed cannot be delivered to a grantee as an escrow. If it be delivered to him, it becomes an operative deed, freed from any condition not expressed in the deed itself and it will vest the title in him, though this may not have been contemplated when the delivery was made and may be contrary to the intention of the parties. One of the grounds upon which this rule is based is that parol evidence is inadmissible to show that the deed was to take effect upon condition. A deed can only be delivered as an escrow to a third person. If it be intended that it shall not take effect until some subsequent condition shall be performed or some subsequent event shall happen, such condition must be inserted in the deed itself. * * * Whether a deed when delivered shall take effect absolutely or only upon the performance of some condition not expressed therein cannot be determined by parol evidence." ' "

The trial court's judgment cancelling the lease was reversed and judgment was rendered for the assignee. See also Parker v. Sorell, Tex.Civ.App., 230 S.W. 819, 820; Paris Grocer Co. v. Burks, 101 Tex. 106, 105 S.W. 174; Manton v. City of San Antonio, Tex.Civ.App., 207 S.W. 951, 952 (W.R.); East Texas Fire Ins. Co. v. Clarke, 1 Tex.Civ.App. 238, 21 S.W. 277, 278; Lambert v. McClure, 12 Tex.Civ.App. 577, 34 S.W. 973, 974; Springfield Fire & Marine Ins. Co. v. Morgan, Tex.Civ.App., 202 S.W. 784, 785; Mason v. University of the South, Tex.Civ.App., 212 S.W.2d 854, 858 (RNRE) and Taylor v. Sanford, 108 Tex. 340, 193 S.W. 661, 5 A.L.R. 1660.

■ There was no pleading of fraud inducing delivery of the assignment by Powers to Pallas. While Powers alleged that Pallas fraudulently obtained the assignment from his secretary, Powers' testimony conclusively shows that with such knowledge, on the next day, he agreed that Pallas might keep the assignment and take it to Houston to obtain thereon the balance of the purchase price, Pallas then paying him $50 more on the $500 consideration. Despite his testimony that he did not intend for title to pass, which evidence was not admissible, Powers definitely testified that he consented for Pallas to keep the assignment so delivered to him on the previous day and that it would have been satisfactory for Pallas to have sold or mortgaged it, provided he paid the balance of $250. Delivery to the grantee is conclusively shown. The facts are not comparable to the facts in the cases which hold there was no delivery when the instrument was placed in the manual possession of the grantee for examination, to copy the field notes, to deliver to an escrow agent, and the like. Powers delivered an assignment to Pallas which, on its face, was complete and unconditional. It was Powers' intention, according to his own testimony, "that the instrument (should) become operative, without further act upon his part, upon performance of the condition". 26 C.J.S., Deeds, § 48, p. 252. Evidence of the alleged condition was not admissible.

The judgment is reversed and judgment rendered for appellants.

LONG and COLLINGS, JJ., concur.